care providers.

143.    As a result of violating the Illinois consumer fraud statute, Merck is liable to

Plaintiff for actual damages, costs and reasonable attorneys' fees, and for such additional

relief as the Court may deem appropriate.

144.    Said action herein is brought by Wilburn Williamson, individually and as

Special Administrator of the Estate of Pauline Gale, deceased, pursuant to the "Wrongful

Death Act" that being  740 ILCS 180/1 and 180/2.

WHEREFORE, Plaintiff, individually and as Special Administrator of the Estate

of Pauline Gale, deceased, demands judgment against the Defendants in an amount in

excess of FIFTY THOUSAND DOLLARS ($50,000.00).

## COUNT 14 -DECEPTIVE TRADE PRACTICES ACT- AGAINST MERCK

### (Survival Act)

COMES NOW Plaintiff and for Count Six of the Complaint against Defendant

Merck, alleges:

145.    Plaintiff adopts by reference the allegations contained and set forth above.

146.    As a direct and proximate result of the defect of the Vioxx herein

manufactured, distributed and sold by the Defendants, Plaintiff's decedent, developed

injuries resulting in decedent's death on October 23, 2004.

147.    Decedent incurred great conscious pain and suffering which resulted in severe

injuries to and death to Decedent.

148.    Said claim for damages is survived by Decedent's Estate and is in excess of

FIFTY THOUSAND DOLLARS ($50,000.00).

149.    The Plaintiff, Wilburn Williamson, individually and as Special Administrator

of the Estate of Pauline Gale, deceased, brings this action herein pursuant to the

**Exhibit 1-B**

"Survival Act", 755 ILCS 5/27-6.

WHEREFORE, Plaintiff, individually and as Special Administrator of the Estate of Pauline Gale, deceased, demands judgment against the Defendants in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

## THE PARTIES AS TO BEXTRA (PFIZER)

150.    Wilburn Williamson, individually and as the special administrator of the estate of Pauline Gale, deceased, is a resident of Collinsville, Illinois. Plaintiff brings this action to recover for personal injuries and death for Plaintiff's Decedent sustained as a result of ingestion of and exposure to Defendant's drug products BEXTRA.

151.    Defendant PFIZER INC. (hereinafter "Pfizer") is a Delaware corporation, and at all times relevant hereto Pfizer was in the business of marketing, selling and distributing the pharmaceutical product Bextra (Valdecoxib ). Pfizer is licensed and registered to do business in Illinois and may be served through its agent: CT Corporation, 208 So. LaSalle St., Suite 814, Chicago, Illinois 60604.

## DISCOVERY RULE AND FRAUDULENT CONCEALMENT

152.    The nature of Plaintiff's injuries and the relationship to Bextra use were inherently undiscoverable; and, consequently, the discovery rule should be applied to toll the running of the statute of limitations until Plaintiff knew or through the exercise of reasonable care and diligence should have known of the existence of potential claims against Defendant.

153.    Plaintiff did not discover, and through the exercise of reasonable care and due diligence, could not have discovered, the true nature of Plaintiff's injuries earlier, nor

could Plaintiff have discovered that Plaintiff's injuries were due to the negligent action of the manufacturers of Bextra until Pfizer pulled Bextra off the market on April 7, 2005.

154.    Plaintiff did not discover, and through the exercise of reasonable care and due diligence, could not have discovered, the true nature of Plaintiff's injuries earlier, nor could Plaintiff have discovered that Plaintiff's injuries were due to the negligent action of the manufacturers of Bextra until Pfizer pulled Bextra off the market on April 7, 2005.

155.    The manufacturers of Bextra are estopped from relying on any statutes of limitation because of its fraudulent concealment and misrepresentation. Merck was under a duty to disclose the risks of cardiac and cerebrovascular events associated with the use of Bextra because this was nonpublic information over which Pharmaceutical Defendant had exclusive control, because the manufacturers knew that this information was not readily available to Plaintiff or plaintiff's doctor and because this information was relevant to Plaintiff and plaintiff's doctor in deciding whether to use Bextra.

156.    Further, Plaintiff did not have knowledge of facts that would lead a reasonable, prudent person to make inquiry to discovery of Defendant's tortuous conduct. Under appropriate application of the "discovery rule", Plaintiff's suit is filed within the applicable statutory limitations period. Moreover, Pharmaceutical Defendant fraudulently concealed from Plaintiff the nature of the injury and the connection between the injury and Defendant negligent acts in designing, manufacturing, and distributing Bextra. This fraudulent concealment tolls the statute of limitations for this action until Bextra was pulled off the market on April 7, 2005.

## JURISDICTION AND VENUE

157.    Defendant is subject to the *in personam* jurisdiction of this Court, and venue is

proper herein, by virtue of the fact that Defendant did and continues to do business within the state of Illinois and committed torts in whole or in part in this state against Plaintiff, as more fully set forth herein. Defendant advertised in Illinois and Madison County, made material omissions and representations in this county, and breached warranties in this county.

158.    There is no federal subject matter jurisdiction because no federal question is raised and there is no jurisdiction based on diversity of citizenship because Plaintiff, Wilburn Williamson, is an adult resident of Madison County, Illinois and was appointed special administrator of this action, and decedent Pauline Gale was a resident of Madison County at the time of death and during the relevant period. Defendant EDWARDSVILLE HEALTH CARE CENTER INVESTORS, L.L.C. d/b/a University Nursing & Rehabilitation Center does business in Illinois, with its principal place of its pharmacy business in the State of Illinois.

## I. ALLEGATIONS AS TO BEXTRA

### BACKGROUND-BEXTRA

159.    This action arises from the sale and distribution of Bextra (Valdecoxib). Bextra is the brand name used by Defendant Pfizer to market and distribute Valdecoxib. Bextra has been proven to cause adverse cardiovascular effects including, but not limited to, heart attack and stroke.

160.    Pfizer during all the times mentioned herein has been engaged in the business of research, licensing, designing, formulating, compounding, testing, manufacturing, producing, processing, inspecting, distributing, marketing, labeling, promoting, packaging and advertising of the prescription drug known as Bextra for ingestion by consumers. Bextra was manufactured, sold, designed, supplied, prescribed, distributed,

marketed and processed by Defendant, who was at all times acting through their servants, employees, representatives and agents, who placed Bextra in the market to be purchased and used by the public.

161.    Pfizer participated in, authorized and directed the production and promotion of Bextra when they knew, or with the exercise of reasonable care, should have known, of the hazards and dangerous propensities of Bextra and thereby actively participated in the tortious conduct which resulted in the injuries suffered by the Plaintiff.

162.    Pfizer obtained FDA approval for Bextra on November 19, 2001, for treatment of musculoskeletal joint pain associated with osteoarthritis, among other maladies. Pfizer encouraged the use of this drug in improper customers, misrepresented the safety and effectiveness of this drug and concealed or understated its dangerous side effects. Pfizer aggressively marketed this drug directly to the consuming public, although only available through prescription, through the use of various marketing mediums, including, but not limited to, print and television advertisements. Pfizer did this to increase sales and profits.

163.    At all times relevant hereto, Pfizer actually knew of the defective nature of their product as herein set forth, yet continued to design, manufacture, market, distribute and sell their product so as to maximize sales and profits at the expense of the general public's health and safety in conscious disregard of the foreseeable harm caused by this product. Pfizer's conduct exhibits such an entire want of care as to establish that their actions were a result of fraud, ill-will, recklessness, gross negligence or willful and intentional disregard to the consumers' rights.

164.    Plaintiff's Decedent, Pauline Gale, received a prescription for Bextra. Plaintiff took the drug as prescribed by a medical professional for approximately a month, and

suffered a stroke and cardiovascular injuries due to clotting or thrombosis. Plaintiff's Decedent's use of Bextra was the direct and proximate cause of the occurrence in question and the injuries at issue.

165.    The damages sought herein are the direct and proximate result of Pfizer's wrongful conduct in connection with designing, testing, inspecting, manufacturing, assembling, developing, labeling, sterilizing, licensing, marketing, advertising, promoting, selling, packaging, supplying and/or distributing the prescription drug Bextra (Valdecoxib).

166.    At all times relevant hereto, Pfizer was engaged in the business of designing, testing, inspecting, manufacturing, assembling, developing, labeling, sterilizing, licensing, marketing, advertising, promoting, selling, packaging, supplying and/or distributing the pharmaceutical drug Bextra (Valdecoxib) throughout the United States.

167.    Had Pfizer properly disclosed the risks associated with using Bextra (Valdecoxib), Plaintiff would not have taken it for treatment of pain. Plaintiff did not know of and did not even have the opportunity to know the potential connection between the use of Bextra (Valdecoxib) and Plaintiff injury until after the FDA issued its recommendation, on April 7, 2005, that Bextra (Valdecoxib) be required to include a black box warning.

168.    At all relevant times, Plaintiff was ignorant of the dangerous nature of Bextra, and the adverse cardiovascular effects that could occur due to consumption of and exposure to Bextra.

## COUNT 15

## STRICT PRODUCTS LIABILITY/ DEFECTIVE DESIGN–Bextra

## Wrongful Death

COMES NOW Plaintiff and for Count Fifteen of the Complaint against Defendant
Pfizer, Inc. alleges:

169.    Plaintiff incorporates all allegations in the preceding paragraphs as is fully set
forth in this Count.

170.    Pfizer designed, produced, manufactured and
injected into the stream of commerce, in the regular course of its business, the
pharmaceutical drug Bextra (Valdecoxib) which it knew would be used by Plaintiff's
decedent and others.

171.    At the time Bextra (Valdecoxib) was manufactured and sold to Plaintiff's
decedent by Pfizer, it was defective in design and unreasonably dangerous, subjecting
users to risks of heart attacks, strokes, and other illnesses which exceeded the benefits of
the products, and for which other safer products were available. This defective condition
made the product unreasonably dangerous when put to a reasonably anticipated use as
treatment for pain relief, which was the use for which Bextra (Valdecoxib) was
advertised.

172.    Alternatively, when the Bextra (Valdecoxib) products were manufactured and
sold to Plaintiff's decedent by Pfizer, the products were defective in design and
formulation, making use of the product more dangerous than other drugs for pain relief.

173.    Plaintiff's decedent used Bextra (Valdecoxib) in a manner reasonably
anticipated.  The Bextra (Valdecoxib) sold to the Plaintiff's decedent reached the
Plaintiff's decedent without substantial change. Plaintiff's decedent was unaware of the
dangerous propensities of the product until well after Plaintiff's use and injury requiring
hospitalization. The Plaintiff's decedent ingested the Bextra (Valdecoxib) without
making any changes or alterations.

174.    As a direct and proximate result of the defective and dangerous design of the

Bextra (Valdecoxib), Plaintiff has been damaged and Plaintiff's decedent has been

caused to die. Pfizer's conduct was done with conscious disregard for the safety of users

of Bextra (Valdecoxib), including Plaintiff's decedent.

175.    The above-described acts and/or omissions of Pfizer were a direct and proximate

cause of the severe, permanent and disabling injuries and resulting damages to Plaintiff's

Decedent leading to her death. Said action herein is brought by Wilburn Williamson,

individually and as Special Administrator of Pauline Gale's estate, pursuant to the

"Wrongful Death Act" that being 740 ILCS 180/1 and 180/2.

WHEREFORE, Plaintiff, individually and as Special Administrator of Pauline

Gale's estate, demands judgment against the Defendants in an amount in excess of

FIFTY THOUSAND DOLLARS ($50,000.00).

## COUNT 16

### STRICT PRODUCTS LIABILITY/ DEFECTIVE DESIGN–BEXTRA

#### Survival Act

COMES NOW Plaintiff and for Count Sixteen of the Complaint against Defendant

Pfizer, Inc. alleges:

176.    Plaintiff adopts by reference the allegations contained and set forth above.

177.    As a direct and proximate result of the defect of the Bextra herein

manufactured, distributed and sold by the Defendant, Plaintiff's decedent, developed

injuries resulting in death on October 23, 2004.

178.    Plaintiff's decedent incurred great conscious pain and suffering which resulted in

severe injuries and death to Decedent.

179.    Said claim for damages is survived by Decedent's Estate and is in excess of

FIFTY THOUSAND DOLLARS ($50,000.00).

180.    The Plaintiff, Wilburn Williamson, individually and as Special

Administrator of Pauline Gale's estate, brings this action herein pursuant to the "Survival

Act", 755 ILCS 5/27-6.

WHEREFORE, Plaintiff, individually and as Special Administrator of Pauline

Gale's estate, deceased, demands judgment against the Defendants in an amount in

excess of FIFTY THOUSAND DOLLARS ($50,000.00).

### COUNT 17

### STRICT PRODUCTS LIABILITY/FAILURE TO WARN--BEXTRA

### Wrongful Death

COMES NOW Plaintiff and for Count Seventeen of the Complaint against Defendant

Pfizer, Inc. alleges:

181.    Plaintiff repeats and re-alleges the allegations of the prior paragraphs as if set

forth at length herein.

182.    The Bextra (Valdecoxib) manufactured, supplied, and sold by Pfizer was

unaccompanied by proper and adequate warnings regarding all adverse side effects

associated with the use of Bextra (Valdecoxib), and the comparative severity and

duration of the adverse effects. The warnings given by Pfizer did not accurately reflect

the symptoms, type, scope, or severity of the side effects.

183.    The Bextra (Valdecoxib) manufactured, supplied, and sold by Pfizer was an

unreasonably dangerous defective product, which posed unacceptable risks to human

health when put to a reasonably anticipated use by Plaintiff's decedent that was without

knowledge of its dangerous characteristics.

184.    Pfizer failed to perform adequate testing and study Bextra (Valdecoxib) prior to

marketing it or properly analyze and warn based. Such adequate testing, study or analysis would have shown that Bextra (Valdecoxib) possessed serious life threatening side effects, with respect to which full and proper warnings accurately and fully reflecting symptoms, type of illness, scope and severity should have been given with respect to the use of Bextra (Valdecoxib).

185.    Pfizer also failed to act properly on adverse event reports it received about Bextra (Valdecoxib), and failed to properly study Bextra (Valdecoxib)'s pre-market as well as post market.

186.    Pfizer also failed to effectively warn users and physicians that numerous other methods of pain relievers, including Ibuprofen, Naproxen, and/or Mobic were safer.

187.    Pfizer failed to give adequate post-marketing warnings or instructions for the use of Bextra (Valdecoxib) because after Pfizer knew or should have know of the risk of injury from Bextra (Valdecoxib) use, Pfizer failed to provide adequate warnings to users or consumers and continued to aggressively promote the product to doctors, hospitals, and directly to consumers.

188.    Plaintiff's decedent used Bextra (Valdecoxib) in a manner reasonably anticipated.

189.    As a direct and proximate result of Pfizer selling Bextra (Valdecoxib) without adequate warnings, as well as the other conduct mentioned in this Count, Plaintiff has been damaged and Plaintiff's decedent was caused to die.

190.    Pfizer's conduct was done with conscious disregard for safety.

191.    The above-described acts and/or omissions of Pfizer were a direct and proximate cause of the severe, permanent and disabling injuries and resulting damages to Plaintiff's decedent leading to her death.

192.    Said action herein is brought by Wilburn Williamson, individually and as

Special Administrator of Pauline Gale, estate, pursuant to the "Wrongful Death Act" that being 740 ILCS 180/1 and 180/2.

WHEREFORE, Plaintiff, individually and as Special Administrator of Pauline Gale's estate, demands judgment against the Defendants in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

### COUNT 18

### STRICT PRODUCTS LIABILITY/FAILURE TO WARN–BEXRA

#### Survival Act

COMES NOW Plaintiff and for Count Eighteen of the Complaint against Defendant Pfizer, Inc. alleges:

193.    Plaintiff adopts by reference the allegations contained and set forth above.

194.    As a direct and proximate result of the defect of the Bextra herein manufactured, distributed and sold by the Defendant, Decedent, developed injuries resulting in her death on October 23, 2004.

195.    Decedent incurred great conscious pain and suffering which resulted in severe injuries and death to Decedent.

196.    Said claim for damages is survived by Decedent's Estate and is in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

197.    The Plaintiff, Wilbum Williamson, individually and as Special Administrator of Pauline Gale's estate, brings this action herein pursuant to the "Survival Act", 755 ILCS 5/27-6.

WHEREFORE, Plaintiff, individually and as Special Administrator of Pauline Gale's estate, deceased, demands judgment against the Defendants in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

## COUNT 19

### NEGLIGENT DESIGN–BEXTRA

#### Wrongful Death

COMES NOW Plaintiff and for Count Nineteen of the Complaint against Defendant

Pfizer, Inc. alleges:

198.   Plaintiff repeats and re-alleges the allegations of the prior paragraphs as if set

forth at length herein.

199.   Pfizer designed, produced, manufactured and injected into the stream of

commerce, in the regular course of its business, the pharmaceutical drug Bextra

(Valdecoxib) which it knew would be used by Plaintiff's decedent and others.

200.   At the time the Bextra (Valdecoxib) was manufactured and sold to Plaintiff's

decedent by Pfizer, it was defective in design and unreasonably dangerous, subjecting

users to risks of heart attacks, strokes, blood clots, and other illnesses which exceeded the

benefits of the product, and for which other safer products were available.

201.   Alternatively, when the Bextra (Valdecoxib) product was manufactured and sold

to the Plaintiff's decedent by Pfizer, the product was defective in design and formulation,

making use of the product more dangerous than other drugs for pain relief.

202.   The Bextra (Valdecoxib) sold to Plaintiff's decedent reached Plaintiff's decedent

without substantial change. Plaintiff's decedent was unaware of the dangerous

propensities of the product until well after Plaintiff's use and subsequent stroke.

Plaintiff's decedent ingested the Bextra (Valdecoxib) without making any changes or

alterations.

203.   In designing and manufacturing Bextra (Valdecoxib), Pfizer failed to exercise the

ordinary care that a careful and prudent drug manufacturer would exercise in the same or

similar circumstances.

204.    As a direct and proximate result of the negligent design of the Bextra

(Valdecoxib), Plaintiff's decedent has been damaged and Plaintiff's decedent was caused

to die.

205.    The above-described acts and/or omissions of Pfizer were a direct and proximate

cause of the severe, permanent and disabling injuries and resulting damages to Plaintiff

leading to her death.

206.    Said action herein is brought by Wilburn Williamson, individually and as

Special Administrator of Pauline Gale's estate, pursuant to the "Wrongful Death Act"

that being  740 ILCS 180/1 and 180/2.

        WHEREFORE, Plaintiff, individually and as Special Administrator of Pauline

Gale's estate, demands judgment against the Defendants in an amount in excess of

FIFTY THOUSAND DOLLARS ($50,000.00).

### COUNT 20

### NEGLIGENT DESIGN–BEXTRA

### Survival Act

COMES NOW Plaintiff and for Count Twenty of the Complaint against Defendant

Pfizer, Inc. alleges:

207.    Plaintiff adopts by reference the allegations contained and set forth above.

208.    As a direct and proximate result of the defect of the Bextra herein manufactured,

distributed and sold by the Defendant, Decedent, developed injuries resulting in her death

on October 23, 2004.

209.    Decedent incurred great conscious pain and suffering which resulted in severe

injuries and death to Decedent.

210.    Said claim for damages is survived by Decedent's Estate and is in excess of

FIFTY THOUSAND DOLLARS ($50,000.00).

211.    The Plaintiff, Wilburn Williamson, individually and as Special Administrator

of Pauline Gale's estate, brings this action herein pursuant to the "Survival Act", 755

ILCS 5/27-6.

WHEREFORE, Plaintiff, individually and as Special Administrator of Pauline

Gale's estate, demands judgment against the Defendants in an amount in excess of

FIFTY THOUSAND DOLLARS ($50,000.00).

**COUNT 21**

**NEGLIGENT FAILURE TO WARN–BEXTRA**

**Wrongful Death**

COMES NOW Plaintiff and for Count Twenty-one of the Complaint against Defendant

Pfizer, Inc. alleges:

212.    Plaintiff repeats and re-alleges the allegations of the prior paragraphs as if set

forth at length herein.

213.    Pfizer owed Plaintiff's decedent a duty to warn of any dangerous defects or side

effects; a duty to assure its product did not cause users unreasonable and dangerous risks,

reactions, side effects; and a duty to provide adequate post market surveillance and

warnings as it learned of Bextra (Valdecoxib) substantial dangers.

214.    Pfizer breached its duty of reasonable care to Plaintiff's decedent in that Pfizer

failed to:

A.  Conduct sufficient testing which, if properly performed, would have shown

that Bextra (Valdecoxib) had serious side effects, including heart attacks, strokes,

hypertension, atherosclerosis, blood clots, and other serious side effects, and warn

Page 54 of 75

users of those risks; and/or

B. Include adequate warnings with the Bextra (Valdecoxib) products that would alert users to the potential risks and serious side effects the drugs; and/or

C. Warn the Plaintiff's decedent that use of Bextra (Valdecoxib) carried a risk of death or permanent disability from heart attacks, strokes, blood clots, other cardiovascular disorders and other serious side effects; and/or

D. Advise the FDA, the health care industry, and the public about the adverse reports it had received regarding Bextra (Valdecoxib); and/or

E. Provide Plaintiff's decedent with other appropriate warnings.

215.   Pfizer should have known that Bextra (Valdecoxib) caused unreasonably dangerous risks and serious side effects of which the general public would not be aware. Pfizer nevertheless advertised, marketed and promoted its product knowing there were safer methods and products for pain control.

216.   As a direct and proximate result of Pfizer's negligence and breaches of its duty of reasonable care, Plaintiff's decedent has been damaged.

217.   The above-described acts and/or omissions of Pfizer were a direct and proximate cause of the severe, permanent and disabling injuries and resulting damages to Decedent leading to her death.

218.   Said action herein is brought by Wilburn Williamson, individually and as Special Administrator of Pauline Gale's estate, pursuant to the "Wrongful Death Act" that being 740 ILCS 180/1 and 180/2.

WHEREFORE, Plaintiff, individually and as Special Administrator of Pauline Gale's estate, demands judgment against the Defendants in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

Page 55 of 75

## COUNT 22

### NEGLIGENT FAILURE TO WARN-BEXTRA

#### Survival Act

COMES NOW Plaintiff and for Count Twenty-two of the Complaint against Defendant

Pfizer, Inc. alleges:

219.    Plaintiff adopts by reference the allegations contained and set forth above.

220.    As a direct and proximate result of the defect of the Bextra herein

manufactured, distributed and sold by the Defendant, Decedent, developed injuries

resulting in her death on October 23, 2004.

221.    Decedent incurred great conscious pain and suffering which resulted in severe

injuries and death to Decedent.

222.    Said claim for damages is survived by Decedent's Estate and is in excess of

FIFTY THOUSAND DOLLARS ($50,000.00).

223.    The Plaintiff, Wilburn Williamson, individually and as Special

Administrator of Pauline Gale's estate, brings this action herein pursuant to the "Survival

Act", 755 ILCS 5/27-6.

WHEREFORE, Plaintiff, individually and as Special Administrator of Pauline

Gale's estate, demands judgment against the Defendants in an amount in excess of

FIFTY THOUSAND DOLLARS ($50,000.00).

### COUNT 23

### FRAUDULENT CONCEALMENT–BEXTRA

#### Wrongful Death

COMES NOW Plaintiff and for Count Twenty-three of the Complaint against Defendant

Pfizer, Inc. alleges:

224.    Plaintiff repeats and re-alleges the allegations of the prior paragraphs as if set forth at length herein.

225.    Pfizer had actual knowledge of the cardiothrombotic effects of Bextra (Valdecoxib). Despite having knowledge of the cardiothrombotic effects of Bextra (Valdecoxib), Pfizer actively concealed and omitted to disclose those effects when marketing Bextra (Valdecoxib) to doctors, health care providers, and to the general public through direct advertisements.

226.    At the time these omissions were made, Pfizer had knowledge of the substantial and significant cardiothrombotic effects of Bextra (Valdecoxib).

227.    Pfizer omitted to inform Plaintiff's decedent of the true cardiothrombotic and other adverse health effects of Bextra (Valdecoxib).

228.    Pfizer further downplayed the results of various studies showing the cardiothrombotic effects; it withheld adverse reports or gave incorrect information about the reports it received about the side effects of Bextra (Valdecoxib) such as heart attacks and strokes. It further instructed and had a training manual for their sales force to dodge and mislead doctors when they asked questions about the cardiothrombotic effects of Bextra (Valdecoxib).

229.    Pfizer failure to disclose material facts constituted fraudulent concealment. Pfizer sanctioned approved and/or participated in the failure to disclose.

230.    Pfizer had a duty to speak because it had superiorknowledge regarding the adverse health effects of Bextra (Valdecoxib) as set forth herein.

231.    The information not disclosed by Pfizer was unavailable to Plaintiff's decedent and/or Plaintiff's decedent's treating health care professionals. Pfizer knew the information was unavailable yet approved and participated in instructing its agents,

servants and employees to not disclose the information in order to promote the sales of Bextra (Valdecoxib) over other Cox 2 inhibitors as well as any non-steroidal anti-inflammatory such as Ibuprofen, Naproxen, and combined Cox 1 and Cox 2 inhibitors such as Mobic.

232.    Plaintiff's decedent was diligent in attempting to seek the information by consulting with his physicians.

233.    The information not disclosed by Pfizer was not within the reasonable reach of Plaintiff's decedent and/or Plaintiff's decedent's treating physicians in the exercise of reasonable care.

234.    The non-disclosed information was material, Pfizer knew it was not disclosing complete information and intended that Plaintiff's decedent and/or Plaintiff's decedent's treating physicians act upon the non-disclosed information in the manner reasonably contemplated.

235.    Plaintiff's decedent and/or Plaintiff's decedent's treating physician were ignorant as to the undisclosed information and had a right to rely on full disclosure.

236.    If Plaintiff's decedent and/or Plaintiff's decedent's treating physicians had known the complete information, they would not have prescribed and/or Plaintiff's decedent would not have taken Bextra (Valdecoxib) as evidenced by Pfizer being required to include a black label warning.

237.    Pfizer's non-disclosure of information was outrageous due to their reckless indifference to the rights of Plaintiff's decedent, justifying an award of damages.

238.    The above-described acts and/or omissions of Pfizer were a direct and proximate cause of the severe, permanent and disabling injuries and resulting damages to Plaintiff leading to her death.

239.   Said action herein is brought by Wilburn Williamson, individually and as

Special Administrator of Pauline Gale's estate, pursuant to the "Wrongful Death Act"

that being 740 ILCS 180/1 and 180/2.

WHEREFORE, Plaintiff, individually and as Special Administrator of Pauline

Gale's estate, demands judgment against the Defendants in an amount in excess of

FIFTY THOUSAND DOLLARS ($50,000.00).

### COUNT 24

### FRAUDULENT CONCEALMENT–BEXTRA

### Survival Act

COMES NOW Plaintiff and for Count Twenty-four of the Complaint against Defendant

Pfizer, Inc. alleges:

240.   Plaintiff adopts by reference the allegations contained and set forth above.

241.   As a direct and proximate result of the defect of the Bextra herein

manufactured, distributed and sold by the Defendant, Decedent, developed injuries

resulting in her death on October 23, 2004.

242.   Decedent incurred great conscious pain and suffering which resulted in severe

injuries and death to Decedent.

243.   Said claim for damages is survived by Decedent's Estate and is in excess of

FIFTY THOUSAND DOLLARS ($50,000.00).

244.   The Plaintiff, Wilburn Williamson, individually and as Special Administrator

of Pauline Gale's estate, brings this action herein pursuant to the "Survival Act", 755

ILCS 5/27-6.

WHEREFORE, Plaintiff, individually and as Special Administrator of Pauline

Gale's estate, demands judgment against the Defendants in an amount in excess of

FIFTY THOUSAND DOLLARS ($50,000.00).

## COUNT 25

## COMMON LAW FRAUD–BEXTRA

### Wrongful Death

COMES NOW Plaintiff and for Count Twenty-five of the Complaint against Defendant Pfizer, Inc. alleges:

245.    Plaintiff repeats and re-alleges the allegations of the prior paragraphs as if set forth at length herein.

246.    Pfizer, at all relevant times, made false representations and omissions to Plaintiff's decedent and other members of the public, including but not limited to, that Bextra (Valdecoxib) was safe, had been adequately tested to determine safety, and did not present life-threatening dangers.

247.    These representations and omissions, as set forth in the above paragraphs, were false. The true facts were that Bextra (Valdecoxib) was not safe, had not been adequately tested, and had dangerous and life-threatening side effects. When Pfizer made the representations, it knew them to be false, and said representations were made by Pfizer with the intent to deceive Plaintiff's decedent and/or Plaintiff's prescribing physicians and with the intent to induce Plaintiff's decedent to use the Bextra (Valdecoxib) manufactured by Pfizer.

248.    Plaintiff's decedent and/or Plaintiff's physicians reasonably relying upon false representations and omissions, Plaintiff's physicians prescribed Bextra (Valdecoxib); Plaintiff's decedent used Bextra (Valdecoxib). Plaintiff's decedent would not have done so if he had known the true facts. In using Bextra (Valdecoxib), Plaintiff's decedent exercised ordinary care.

249.    As a direct and proximate result of the aforesaid fraudulent conduct, Pfizer caused Plaintiff's decedent to suffer the damages and injuries herein alleged.

250.    Pfizer conduct was outrageous due to its evil motive or reckless indifference to the rights of Plaintiff's decedent, justifying an award of damages.

251.    The above-described acts and/or omissions of Pfizer were a direct and proximate cause of the severe, permanent and disabling injuries and resulting damages to Plaintiff's decedent leading to her death.

252.    Said action herein is brought by Wilburn Williamson, individually and as Special Administrator of Pauline Gale's estate, pursuant to the "Wrongful Death Act" that being 740 ILCS 180/1 and 180/2.

WHEREFORE, Plaintiff, individually and as Special Administrator of Pauline Gale's estate, demands judgment against the Defendants in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

### COUNT 26

### COMMON LAW FRAUD–BEXTRA

### Survival Act

COMES NOW Plaintiff and for Count Twenty-six of the Complaint against Defendant Pfizer, Inc. alleges:

253.    Plaintiff adopts by reference the allegations contained and set forth above.

254.    As a direct and proximate result of the defect of the Bextra herein manufactured, distributed and sold by the Defendant, Decedent, developed injuries resulting in her death on October 23, 2004.

255.    Decedent incurred great conscious pain and suffering which resulted in severe injuries and death to Decedent.

256.    Said claim for damages is survived by Decedent's Estate and is in excess of

FIFTY THOUSAND DOLLARS ($50,000.00).

257.    The Plaintiff, Wilburn Williamson, individually and as Special Administrator

of Pauline Gale's estate, brings this action herein pursuant to the "Survival Act", 755

ILCS 5/27-6.

WHEREFORE, Plaintiff, individually and as Special Administrator of Pauline

Gale's estate, demands judgment against the Defendants in an amount in excess of

FIFTY THOUSAND DOLLARS ($50,000.00).

### COUNT 27

### BREACH OF IMPLIED WARRANTY–BEXTRA

### Wrongful Death

COMES NOW Plaintiff and for Count Twenty-seven of the Complaint against Defendant

Pfizer, Inc. alleges:

258.    Plaintiff repeats and re-alleges the allegations of the prior paragraphs as if set

forth at length herein.

259.    When Pfizer placed the Bextra (Valdecoxib) into the stream of commerce, Pfizer

knew of the use for which the supplement was intended and impliedly warranted to

consumers including Plaintiff's decedent that the use of Bextra (Valdecoxib) was a safe

and acceptable means of relieving pain and impliedly warranted that the product was of

merchantable quality and safe for its intended use.

260.    Plaintiff's decedent relied upon Pfizer and its judgment when he purchased and

utilized Bextra (Valdecoxib).

261.    The Bextra (Valdecoxib) was not of merchantable quality and was not safe or fit

for its intended use because it was unreasonably dangerous and incapable of satisfying

the ordinary purpose for which it was intended, and because it caused serious injury to Plaintiff's decedent.

262.    As a direct and proximate result of the dangerous and defective condition of the Bextra (Valdecoxib) Plaintiff's decedent suffered injury, and he incurred economic damages in the form of medical expense.

263.    Plaintiff's decedent is entitled to recover from Pfizer for all damages caused by the defective product including, but not limited to, damages for pain, suffering, mental anguish, emotional distress, and loss of the capacity to enjoy life, loss of life, lost past and future income and incurred expense.

264.    The above-described acts and/or omissions of Pfizer were a direct and proximate cause of the severe, permanent and disabling injuries and resulting damages to Decedent leading to her death.

265.    Said action herein is brought by Wilburn Williamson, individually and as Special Administrator of Pauline Gale's estate, pursuant to the "Wrongful Death Act" that being 740 ILCS 180/1 and 180/2.

WHEREFORE, Plaintiff, individually and as Special Administrator of Pauline Gale's estate, demands judgment against the Defendants in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

## COUNT 28

## BREACH OF IMPLIED WARRANTY–BEXTRA

### Survival Act

COMES NOW Plaintiff and for Count Twenty-eight of the Complaint against Defendant Pfizer, Inc. alleges:

266.    Plaintiff adopts by reference the allegations contained and set forth above.

Page 63 of 75

267.    As a direct and proximate result of the defect of the Bextra herein manufactured, distributed and sold by the Defendant, Decedent, developed injuries resulting in her death on October 23, 2004.

268.    Decedent incurred great conscious pain and suffering which resulted in severe injuries and death to Decedent.

269.    Said claim for damages is survived by Decedent's Estate and is in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

270.    The Plaintiff, Wilburn Williamson, individually and as Special Administrator of Pauline Gale's estate, brings this action herein pursuant to the "Survival Act", 755 ILCS 5/27-6.

WHEREFORE, Plaintiff, individually and as Special Administrator of Pauline Gale's estate, demands judgment against the Defendants in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

### COUNT 29

### BREACH OF EXPRESS WARRANTY–BEXTRA

### Wrongful Death

COMES NOW Plaintiff and for Count Twenty-nine of the Complaint against Defendant Pfizer, Inc. alleges:

271.    Plaintiff repeats and re-alleges the allegations of the prior paragraphs as if set forth at length herein.

272.    At all relevant times, Pfizer expressly warranted to Plaintiff's decedent by statements made by Pfizer or its authorized agents, orally or in written publications, package labels, and/or inserts, that the Bextra (Valdecoxib) was safe, effective, fit, and proper for its intended use. The express warranties include, but were not limited to:

Bextra (Valdecoxib) is used in adults for:

A.  for relief of the signs and symptoms of osteoarthritis

B.  for relief of the signs and symptoms of rheumatoid arthritis in adults

C.  management of short-term pain

D.  for the management of acute pain in adults

E.  for the treatment of primary dysmenorrheal

F.  to reduce the number of adenomatous colorectal polyps in familial

adenomatous polyposis (FAP), as an adjunct to usual care.

273.    In utilizing Bextra (Valdecoxib), Plaintiff's decedent relied upon the skill,

judgment, representations, and express warranties of the Pfizer.

274.    The express warranties and representations made by Pharmacia, Searle, Monsanto

and Pfizer were false in that Bextra (Valdecoxib) was not safe and was not fit for the use

for which it was intended.

275.    As a direct and proximate result of the dangerous and defective condition of

Bextra (Valdecoxib), Plaintiff's decedent suffered injury, and he incurred economic

damages in the form of medical expense.

276.    Plaintiff's decedent is entitled to recover from Pfizer for all damages caused by

the defective product including, but not limited to, damages for pain, suffering, mental

anguish, emotional distress, and loss of life, lost future income and incurred expense.

277.     The above-described acts and/or omissions of Pfizer were a direct and proximate

cause of the severe, permanent and disabling injuries and resulting damages to Plaintiff

leading to her death.

278.    Said action herein is brought by Wilburn Williamson, individually and as

Special Administrator of Pauline Gale's estate, pursuant to the "Wrongful Death Act"

that being 740 ILCS 180/1 and 180/2.

WHEREFORE, Plaintiff, individually and as Special Administrator of Pauline Gale's estate, demands judgment against the Defendants in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

### COUNT 30

### BREACH OF EXPRESS WARRANTY–BEXTRA

### Survival Act

COMES NOW Plaintiff and for Count Thirty of the Complaint against Defendant Pfizer, Inc. alleges:

279.    Plaintiff adopts by reference the allegations contained and set forth above.

280.    As a direct and proximate result of the defect of the Bextra herein manufactured, distributed and sold by the Defendant, Decedent, developed injuries resulting in her death on October 23, 2004.

281.    Decedent incurred great conscious pain and suffering which resulted in severe injuries and death to Decedent.

282.    Said claim for damages is survived by Decedent's Estate and is in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

283.    The Plaintiff, Wilburn Williamson, individually and as Special Administrator of Pauline Gale's estate, brings this action herein pursuant to the "Survival Act", 755 ILCS 5/27-6.

WHEREFORE, Plaintiff, individually and as Special Administrator of Pauline Gale's estate, demands judgment against the Defendants in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

### COUNT 31

## NEGLIGENT MISREPRESENTATION-CELEBREX

### Wrongful Death

COMES NOW Plaintiff and for Count Thirty-one of the Complaint against Defendant
Pfizer, Inc. alleges:

284.    Plaintiff repeats and re-alleges the allegations of the prior paragraphs as if set
forth at length herein.

285.    At all relevant times, Pfizer knew, or should have known, that there were
dangerous side effects resulting from the ingestion of Bextra (Valdecoxib).

286.    Pfizer knew or reasonably should have known that consumers such as Plaintiff's
decedent would not have known about the increased risk of stroke associated with the
ingestion of Bextra (Valdecoxib).

287.    Pfizer armed with the knowledge stated in the preceding two paragraphs,
preceded with the design, production, manufacture, promotion, advertising, and sale of
Bextra (Valdecoxib) without adequate warning of the side effects and dangerous risks to
the consuming public including Plaintiff's decedent.

288.    Pfizer negligently represented Plaintiff's decedent the safety and effectiveness of
Bextra (Valdecoxib) and concealed material information, including adverse information
regarding the safety and effectiveness of Bextra (Valdecoxib). The misrepresentations
and/or material omissions made by or perpetuated by Pfizer are as follows, Pfizer failed
to:

   A.  Conduct sufficient testing which, if properly performed, would have shown
   that Bextra (Valdecoxib) had serious side effects, including heart attacks, strokes,
   hypertension, atherosclerosis, blood clots, and other serious side effects, and warn
   users of those risks; and/or

B. Include adequate warnings with the Bextra (Valdecoxib) products that would
alert users to the potential risks and serious side effects of the drugs; and/or

C. Warn the Plaintiff's decedent that use of Bextra (Valdecoxib) carried a risk of
death or permanent disability from heart attacks, strokes, blood clots, other
cardiovascular disorders and other serious side effects; and/or

D. Advise the FDA, the health care industry, and the public about the adverse
reports it had received regarding Bextra (Valdecoxib); and/or

E. Provide Plaintiff's decedent with other appropriate warnings.

289.    Pfizer made the misrepresentations and omissions with the intent for Plaintiff's
decedent and the consuming public to rely upon such information (or the absence of such
information) in selection Bextra (Valdecoxib) as a treatment for pain relief.

290.    Plaintiff's decedent justifiably relied on and/or was induced by the
misrepresentations and/or active concealment by Pfizer and he relied upon the absence of
safety information which Pfizer suppressed, concealed, or failed to disclose all Plaintiffs'
detriment.

291.    As a direct and proximate result of the dangerous and defective condition of
Bextra (Valdecoxib) Plaintiff's decedent suffered injury, and he incurred economic
damages in the form of medical expense.

292.    Plaintiff's decedent is entitled to recover from Pfizer for all damages caused by
the defective product including, but not limited to, damages for pain, suffering, mental
anguish, emotional distress, and loss of life, lost future income and expense.

293.    The above-described acts and/or omissions of Pfizer were a direct and proximate
cause of the severe, permanent and disabling injuries and resulting damages to Plaintiff
leading to her death.

294.    Said action herein is brought by Wilburn Williamson, individually and as

Special Administrator of Pauline Gale's estate, pursuant to the "Wrongful Death Act"

that being  740 ILCS 180/1 and 180/2.

WHEREFORE, Plaintiff, individually and as Special Administrator of Pauline

Gale's estate, demands judgment against the Defendants in an amount in excess of

FIFTY THOUSAND DOLLARS ($50,000.00).

### COUNT 32

### NEGLIGENT MISREPRESENTATION–BEXTRA

### Survival Act

COMES NOW Plaintiff and for Count Thirty-two of the Complaint against Defendant

Pfizer, Inc. alleges:

295.    Plaintiff adopts by reference the allegations contained and set forth above.

296.    As a direct and proximate result of the defect of the Bextra herein

manufactured, distributed and sold by the Defendant, Decedent, developed injuries

resulting in her death on October 23, 2004.

297.    Decedent incurred great conscious pain and suffering which resulted in severe

injuries and death to Decedent.

298.    Said claim for damages is survived by Decedent's Estate and is in excess of

FIFTY THOUSAND DOLLARS ($50,000.00).

299.    The Plaintiff, Wilburn Williamson, individually and as Special Administrator

of Pauline Gale's estate, brings this action herein pursuant to the "Survival Act", 755

ILCS 5/27-6.

WHEREFORE, Plaintiff, individually and as Special Administrator of Pauline

Gale's estate, deceased, demands judgment against the Defendants in an amount in

excess of FIFTY THOUSAND DOLLARS ($50,000.00).

## ALLEGATIONS AS TO NURSING HOME DEFENDANT--EDWARDSVILLE

## HEALTH CARE CENTER INVESTORS, L.L.C. d/b/aUniversity Nursing &

### Rehabilitation Center

### COUNT 33

#### Negligence -- Survival Action

Comes now the Plaintiff's decedent, Pauline Gale, by and through Wilburn Williamson, as Special Administrator of the Estate of Pauline Gale by and through her attorneys, GOLDENBERG, MILLER, HELLER & ANTOGNOLI, P.C., and for her cause of action against the Defendant, University Nursing & Rehab states as follows:

300. That Pauline Gale died on October 23, 2004.

301. That further, Wilburn Williamson, has been appointed Special Administrator of the Estate of Pauline Gale, deceased, and brings this action as Special Administrator pursuant to law provided.

302. That Defendant EDWARDSVILLE HEALTH CARE CENTER INVESTORS, L.L.C. d/b/a University Nursing & Rehabilitation Center (hereinafter "University Nursing & Rehab"), is a corporation, organized and existing pursuant to the laws of the State of Illinois and is a duly licensed long-term care facility by the State of Illinois under the provision of the Nursing Home Care Act 210 ILCS 45/1-101, *et seq.*, operating as a nursing home with its principal place of business in Madison County, in the State of Illinois.

303. That University Nursing & Rehab may be served by service of process on its registered agent for service: Lawrence Y. Schwartz, 7366 N. Lincoln Ave., Lincolnwood, IL 60645.

304. That in 2004 and prior thereto, Defendant owned, operated, managed, maintained, controlled, and was a licensee of a certain long-term care facility in which it treated individuals suffering from various ailments and provided and supplied rooms, laboratories, drugs, and certain devices for the needs of the patients during their treatment in said long-term care facility.

305. That at all times relevant herein, there was in full force and effect a statute

Page 70 of 75

known as the Nursing Home Care Act (Act) 210 ILCS 45/1-101, *et seq.*

306. That on or about September 23, 2004, Plaintiff's decedent was admitted and accepted by Defendant as a patient and Defendant agreed to be responsible for the care, health, safety, and well-being of Plaintiff's decedent and to render competent and adequate long-term care services in conjunction with an illness from which Plaintiff's decedent was then and there suffering, which required medical treatment.

307. That on or about September 23, 2004, while under the care of University Nursing & Rehab, Plaintiff's decedent suffered from a stroke, cardiovascular injury, and sepsis, and during said period received improper care and monitoring that led to her death.

308. That due to Plaintiff's decedent suffering from said stroke, cardiovascular injury, and sepsis, her condition and well-being deteriorated eventually leading to Plaintiff's decedent's untimely death.

309. That at all times relevant herein, University Nursing & Rehab, operated by the Defendant, was a "Facility" as described in ¶1-113 of the Act and was subject to the requirements of the Act and the regulations of the Illinois Department of Public Health promulgated pursuant to the Act.

310. That at all times relevant herein, Defendant was subject to the requirements of 42 U.S.C. ¶1396r, seq., as amended by the Omnibus Budget Reconciliation Act of 1987 (OBRA), Pub.L. No. 100-203, 101 Stat. 1330.

311. That at all times relevant here, Defendant was subject to the requirements of 42 C.F.R. Part 483 setting forth Medicare and Medicaid Requirements for Long-Term Facilities (OBRA Regulations) as effective on October 1,1990.

312. That at all times herein mentioned, the Defendant owed a duty to provide quality care to the Plaintiff's decedent as well as to supervise the giving of that care.

313. That at all times relevant herein, Defendant, individually and through its agents, servants, and employees, had the duty not to abuse or neglect any resident of University Nursing & Rehab as provided by the Act as set out in 210 ILCS 45/1-103 and 210 ILCS 45/1-117.

314. That at all times relevant herein, Defendant, individually and through its agents, servants, and employees, had a duty to provide care and services under OBRA and ¶483.25 of the OBRA Regulations.

315. That at all times relevant therein, the Defendant owed the Plaintiff's decedent a duty to use that degree of skill in the care of such patient required of institutions of the like, kind and character; that in violation of the duties that Defendant owed to the Plaintiff's decedent, the Defendant was guilty of one or more of the following negligent and careless acts or omissions that directly and proximately caused injury to the Plaintiff's decedent:

A.   Carelessly and negligently administered Plaintiff's decedent's medications and failed to supervise her condition.

B.   Failed to properly observe and record the Plaintiff's decedent's condition and behavior.

C.   Failed to timely notify the attending physician of the Plaintiff's decedent's deteriorating condition, and other symptoms that would have apprized the attending physician of the existence of a stroke, cardiovascular injury, and sepsis.

D.   Failed to administer standards of nursing procedures for the treatment and prevention of Plaintiff's decedent's injury by failing to consistently monitor Plaintiff's decedent.

E.   Failed to seek emergency assistance and transport to a hospital when Decedent showed signs of stroke, cardiovascular injury, and sepsis.

F.   Failed to seek emergency assistance and transport to a hospital, in a timely fashion, when Decedent became unresponsive.

G.   Otherwise failed to provide adequate medical care, personal care, maintenance, and treatment to Plaintiff's decedent.

316. That as a direct and proximate result of the negligent acts and/or statutory violations of the Defendant, individually and through its agents, servants, and employees, Plaintiff's decedent suffered a stroke, cardiovascular injury, and sepsis, resulting in great and unnecessary anguish, distress, and conscious pain and suffering; that Plaintiff's decedent's overall condition was greatly aggravated and worsened; that she experienced extreme physical and mental pain and suffering; and that Plaintiff's decedent was permanently impaired from pursuing her usual and ordinary activities all of which eventually led to her untimely death.

317. That at all times relevant herein, the Nursing Home Care Act provided:

Page 72 of 75

"The owner and licensee are liable to a resident for any intentional or negligent act or omission of their agents or employees which injures the resident." 210 ILCS 45/3-601.

318. That Plaintiff's decedent sustained damages prior to her death as a result of the foregoing negligence for which she would have been entitled to bring an action had she survived and this right of action survives her.

319. That Wilburn Williamson brings this action for Pauline Gale under the provisions of 755 ILCS 5/27-6, known as the Illinois Survival Statute.

WHEREFORE, Plaintiff's decedent, Pauline Gale, by and through Wilburn Williamson, as Special Administrator of the Estate of Pauline Gale, prays for judgment against the Defendant, University Nursing & Rehab, in a sum in excess of FIFTY THOUSAND DOLLARS ($50,000.00), plus costs of suit.


## COUNT 34
### Negligence – Wrongful Death

Comes now the Plaintiff's decedent, Pauline Gale, by and through Wilburn Williamson, as Special Administrator of the Estate of Pauline Gale by and through her attorneys, GOLDENBERG, MILLER, HELLER & ANTOGNOLI, P.C., and for her cause of action against the Defendant, University Nursing & Rehab states as follows:

320. That at all relevant times herein mentioned, the Decedent was a resident of Madison County, Illinois.

321. That at all times herein mentioned, the Defendant, University Nursing & Rehab was a corporation organized and existing under the laws of the State of Illinois with its principal place of business in Madison County, Illinois.

322 . Plaintiff repeats each of the preceding allegations of Count Thirty-Three and incorporates them herein by reference.

323. That Plaintiff's decedent left surviving a son, Wilburn Williamson, as a next of kin.

324. That Plaintiff's decedent's next of kin suffered injuries as a result of her death, including the loss of companionship and society. Further, Plaintiff's decedent's Estate was diminished by virtue of the medical and funeral expenses that were incurred.

325. That Wilburn Williamson brings this action for Pauline Gale pursuant to 740 ILCS 180/0.01, *et seq.*, commonly known as the Wrongful Death Act of the State of

Illinois.

WHEREFORE, Plaintiff's decedent, Pauline Gale, by and through Wilburn Williamson, as Special Administrator of the Estate of Pauline Gale, prays for judgment against the Defendant, University Nursing & Rehab, in a sum in excess of FIFTY THOUSAND DOLLARS ($50,000.00), plus costs of suit.

## COUNT 35- LOSS OF CONSORTIUM
### as to Merck, Pfizer, and University Nursing and Rehab.

COMES NOW Plaintiff and for Count Thirty-Five of the Complaint against Defendant Merck, Pfizer, Inc. and University Nursing and Rehab alleges:

326.    That for all times herein mentioned, Wilburn Williamson was the son of the

Decedent.

327.    That, as special administrator, Wilburn Williamson represents the only surviving

heir of Pauline Gale, deceased.

328.    That Decedent's injuries due to the aforementioned Defendants' negligence have

caused Plaintiff and his family to suffer a loss of consortium; including but not limited to, loss of household services, support, and loss of companionship.

WHEREFORE, Plaintiff's decedent, Pauline Gale, by and through Wilburn Williamson, as Special Administrator of the Estate of Pauline Gale, prays for judgment against the Defendant, University Nursing & Rehab, in a sum in excess of FIFTY THOUSAND DOLLARS ($50,000.00), plus costs of suit.

## PRAYER FOR RELIEF AS TO ALL COUNTS

WHEREFORE, Plaintiffs request that this Court enter a judgment against the Defendant and in favor of the Plaintiff, and to award the following relief:

a. General damages in the sum in excess of the jurisdictional minimum of this Court;

b. Compensatory damages, including past, present, and future physical pain and suffering, loss of earning capacity, disfigurement, physical

Page 74 of 75

impairment, and medical care expenses;

c. Consequential Damages;

d. Costs including, but not limited to, discretionary Court costs of this cause, and those costs available under the law, as well as expert fees and attorney fees and expenses, and costs of this action; and,

e. Such other relief as the Court deems just and proper.

Respectfully submitted,

**GOLDENBERG HELLER ANTOGNOLI
ROWLAND SHORT & GORI, P.C.**

By_____
        **Robert D. Rowland #6199915
        Aaron K. Dickey #6281731**
        2227 S. State Route 157
        P.O. Box 959
        Edwardsville, IL 62025
        618/656-5150 Telephone
        618/656-6230 Facsimile

ATTORNEYS FOR PLAINTIFF